CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 04, 2025

LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

KEITH E. MOSS,                    )
    Plaintiff,                   )    Case No. 7:23-cv-00110
                                 )
v.                               )
                                 )    By: Michael F. Urbanski
TIM TRENT, et al.,               )    Senior United States District Judge
    Defendants.                  )

### MEMORANDUM OPINION

Keith E. Moss, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against 40 current and former employees of the Blue Ridge Regional Jail Authority (BRRJA).[1] Moss asserts, among other claims, that he was subjected to various forms of excessive force after being arrested and taken to the Lynchburg Adult Detention Center (LADC) on February 13, 2021, and that he was denied medical care for the injuries he sustained before and after arriving at the facility. The defendants have collectively filed 21 renewed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[2] Moss has filed a response in opposition to the motions to dismiss and a motion for sanctions. The court's rulings on the motions to dismiss (ECF Nos. 164, 166, 168, 170, 172, 174, 176, 178, 180, 181,

---

[1] The defendants are as follows: BRRJA Administrators Tim Trent and Joshua Salmon; Site Administrator Enochs; Assistant Site Administrator Hodges; Lieutenants Lambert, Smith, and Winfield; Sergeants Clark, Broggins, Roberts, Draper, and Newland; Corporals Miller, Barker, Phillips, Millner, Gray, and White; Officers Henriquez, Iovenetti, Mullins, Canzone, Bachelle, McDonald, Strader, Knichel, Wallace, Hamlett, Tighe, Bonner, Allen, Harris, Patrick, and Merrill; and Nurses Mitchell, Lucas, Jones, Ayers, Vosper, and Fanning.

[2] The court denied the defendants' initial motions to dismiss without prejudice on November 19, 2024, after granting Moss leave to file an amended complaint within 30 days. Order, ECF No. 160, at 5. Moss did not file an amended complaint within the time allowed or timely request an extension of the deadline. Consequently, the defendants renewed their motions to dismiss the original complaint.

184, 186, 188, 190, 193, 195, 197, 198, 200, 201, and 202) and the motion for sanctions (ECF

No. 208) are set forth below.

## I.    Background

The following facts are taken from the complaint and state court records related to

Moss's arrest. See Nat'l Ass'n of Immigr. Judges v. Owen, 139 F.4th 293, 305 (4th Cir. 2025)

("In reviewing a motion to dismiss, [courts] may properly take judicial notice of matters of

public record."); Lolavar v. de Santibanes, 430 F.3d 221, 224 & n.2 (4th Cir. 2005) (taking

judicial notice of state court records).

According to the complaint, officers with the Lynchburg Police Department (LPD)

arrested Moss on February 13, 2021. Compl., ECF No. 1, ¶¶ 23, 25. Moss alleges that he was

initially seized for an "unlawful pedestrian" offense. Id. ¶ 23. State court records indicate that

LPD officers subsequently sought and obtained warrants for his arrest on other charges,

including a misdemeanor charge of disorderly conduct, a misdemeanor charge of obstruction

of justice, and felony charges of assault and battery against three LPD officers: C. Harris, W.

Witcher, and C. Pritchard. See Mem. Supp. Mot. Dismiss. Ex. 1, ECF No. 165-1, at 4–10. The

records indicate that Kang H. Lee, a state magistrate, issued the arrest warrants and a

commitment order at approximately 9:00 p.m. on February 13, 2021. Id. at 1–10.

Moss alleges that LPD officers used excessive force during the course of arresting him

and that he was "severely injured" as a result of the use of force. Compl. ¶¶ 25–26. He alleges

that his injuries included a "severe head injury," "multiple lacerations [and] severe swelling to

the . . . face [and] body, a "penis injury," and "severe muscle/joint injury(s)." Id. ¶ 28.

After being arrested, Moss was taken into custody at the LADC. Moss alleges that defendants Clark, Miller, Hamlett, and Barker assisted with placing him into detention notwithstanding his severe injuries, id. ¶ 30, and that Clark performed a strip search "predicated upon law enforcement's unfounded suspicion that [Moss] was in possession of marijuana," id. ¶ 39. During the strip search, Clark spread Moss's buttocks apart in order to inspect his anal cavity and "sexually assaulted" Moss by "gro[ping]" his genitals. Id. ¶¶ 32–33. Clark also documented "several injuries" to Moss's person during the search. Id. ¶ 40.

Moss alleges that he repeatedly requested medical care from the time he arrived at the LADC on February 13, 2021, until a shift change on February 14, 2021, and that Clark, Miller, Hamlett, and Barker failed to respond to his requests. Id. ¶¶ 41, 45. Moss then spoke in person with defendants White and Lambert. He alleges that White and Lambert refused to have him brought before a magistrate and failed to respond to his requests for medical care. Id. ¶ 43.

On February 14, 2021, Moss "refused to complete the booking process" based on his belief that he was being subjected to "false imprisonment" and since Clark, Miller, Hamlett, and Barker "refused to provide medical care." Id. ¶ 45. As a consequence of Moss's failure to comply, Clark, Miller and Barker "physically assault[ed]" him while Hamlett "contaminated [him] with OC spray."[3] Id. ¶¶ 44, 46. Moss alleges that the OC spray came into contact with multiple lacerations on his face and that Clark, Miller, Hamlett, and Barker provided no medical care following his exposure to the spray. Id. ¶¶ 47–48.

---

[3] "'OC' is an abbreviation for 'oleoresin capsicum.' OC spray is also known as pepper spray or mace." United States v. Rodriguez, 392 F.3d 539, 542 n.1 (2d Cir. 2004).

On February 15, 2021, after Moss continued to request assistance, Clark informed him that, if he complied with Clark's orders, Clark would remove him from his holding cell, provide medical care and access to a telephone, and arrange for him to see a magistrate. Id. ¶ 50. Despite complying with Clark's orders, Moss was placed in a restraint chair with a spit hood over his head by Clark, Miller, Barker, and Hamlett. Id. ¶¶ 51–52. Moss alleges that he remained in the restraint chair with his head covered for nearly seven hours; that defendant Enochs authorized the decision to keep him in the restraint chair for more than four hours; and that defendants Henriquez, Winfield, and Fanning signed reports indicating that they personally observed him being confined in the restraint chair. Id. ¶¶ 58–62.

That same day, after being removed from the restraint chair to complete the booking process, Moss was involved in a "physical altercation" with defendants Henriquez, Winfield, and Phillips. Id. ¶ 68. During the altercation, Henriquez and Winfield pinned him to the ground, and Phillips deployed OC spray that came into contact with his facial lacerations. Id. ¶¶ 69–70. Defendants Gray, Canzone, Mullins, and Henriquez subsequently handcuffed Moss and placed him in a restraint chair again with a spit hood over his head and without decontaminating him from being sprayed. Id. ¶¶ 71, 89. Moss alleges that defendant Broggins ordered that he be placed in the restraint chair with his hands cuffed behind his back; that he remained in the chair for an additional eight-hour period "with OC spray on his person, a spit hood over his head, and his hands cuffed behind his back"; and that he "suffered permanent and significant impairment to his shoulders" as a result of the confinement conditions. Id. ¶¶ 72–74, 92. Moss further alleges that Enochs authorized the decision to keep him in the chair for more than four hours; that internal reports indicate that defendants Roberts, Salmon,

Vosper, and Fanning participated in or observed his extended confinement in the chair; and that Vosper falsely reported that Moss had no visible injuries. Id. ¶¶ 74–77, 91.

After being "confined to a restraint chair for a [collective] total of 15 hours under extremely inhumane conditions" on February 15, 2021, Moss was escorted back to his holding cell. Id. ¶¶ 79–80. While in the cell, Moss was subjected to OC spray again by defendant Enochs. Id. ¶¶ 81, 85. He then "backed away from the cell door and complied with defendant Enochs['s] order to get on the ground in a prone position." Id. ¶ 81. As the cell door opened, Enochs ordered other officers to enter the cell and return Moss to a restraint chair. Id. ¶ 82. In response to the order, Moss "jumped to his feet and raised his hands in the air only to protest against being placed in the restraint chair" again. Id. ¶ 83. Defendant Bachelle then administered OC spray in the cell a second time, and Moss "repeatedly declared that he could not breathe." Id. ¶¶ 84–85. While he struggled to breathe and see, "defendants Bachelle, Strader, Enochs, Knichel, and Iovenetti began punching [Moss] with closed fist[s] while they violently took [him] to the ground inside of the cell." Id. ¶ 86.

From February 15, 2021, until February 19, 2021, Moss was held "incommunicado" in a cell in the intake unit. Id. ¶ 93. He alleges that he received no medical care, phone calls, recreation, or showers during that time, and that he was denied adequate access to "water/plumbing," lights, and food. Id.

On February 19, 2021, when his tray slot was opened for breakfast, Moss stuck his arm through the slot "to protest against his overall inhumane and false imprisonment." Id. ¶ 94. Defendants Enochs, Strader, Bachelle, Iovenetti, Tighe, Broggins, and Knichel approached the cell, and Enochs directed Moss to remove his arm from the tray slot and back away from

the door. Id. ¶ 96. When Moss failed to comply, Enochs "contaminated [Moss's] face with OC spray." Id. ¶ 97. "After being contaminated by OC spray and while being restrained on his stomach by roughly six officers, defendant Iovenetti placed [Moss] in a miliary style arm bar," causing "permanent and significant impairment" to Moss's arm, and Enochs, Strader, Tighe, and Gray "repeatedly punched" Moss in the face, causing a significant nose injury. Id. ¶¶ 103–04. Enochs, Strader, Merrill, Gray, Tighe, Canzone, Knichel, Iovenetti, Wallace, Bachelle, Lucas, and Fanning then participated in placing Moss in a restraint chair again with a spit hood over his head. Id. ¶ 98. Moss alleges that he remained in the chair with his head covered for approximately nine hours at defendant Broggins's direction, "after being contaminated with OC spray, beaten, and while suffering a very severe nose injury," and that he "almost died while in the restraint chair." Id. ¶¶ 100–01, 107. At some point during the nine-hour period, Moss spoke to defendants McDonald and Bachelle, "who falsely declared that they were going to intervene." Id. ¶ 102. On each occasion that Moss was confined to the restraint chair, he was "forced to relieve his bowels and his urine on himself." Id. ¶ 118.

Moss alleges that defendant Draper was "in charge of the intake unit" from February 14, 2021, until February 19, 2021, and that defendants Patrick, Millner, and Bonner worked as intake unit officers. Id. ¶¶ 108–09. During that timeframe, Moss spoke in person to defendants Newland, Smith, Allen, and Harris, who "failed to reasonably respond" to his requests for medical care. Id. ¶¶ 110, 120. Moss also alleges that defendant Ayers, a nurse at the LADC, refused to provide medical treatment from February 13, 2021 through February 19, 2021, and that Ayers, Clark, Miller, Barker, and Hamlett "participated in similar conduct described in [the] complaint against Corey Barbour." Id. ¶¶ 65–66. An incident report reviewed by Moss

indicates that defendant Lucas, another nurse, informed Broggins that Moss "probably had a broken nose." Id. ¶ 115.

After being removed from the restraint chair on February 19, 2021, Moss was transported to the Rockbridge Regional Jail, where he finally received medical treatment. Id. ¶ 125. A nurse documented his physical injuries, and a doctor prescribed pain medication. Id. ¶¶ 126–7. When Moss returned to the LADC on February 25, 2021, he was denied access to the pain medication for nearly a month, and x-rays of his nose were delayed for two months. Id. ¶ 128.

Exhibits submitted by the parties indicate that a grand jury subsequently indicted Moss on multiple charges, including obstruction of justice; assault and battery of LPD Officer C. Harris; assault and battery of LPD Officer C. Pritchard; assault and battery of seven correctional officers, each of whom is named as a defendant in this case; and malicious wounding. See Mem. Supp. Mot. Dismiss Ex. 2, ECF No. 165-2, at 1–2; Mot. for Sanctions Ex. 1, ECF No. 208-1, at 1–2. Moss alleges that the "unlawful pedestrian" charge for which he was initially seized was nolle prossed during a preliminary hearing on June 10, 2021. Compl. ¶ 24. Moss proceeded to trial in August 2022, and a jury found him guilty of obstruction of justice, assault and battery of LPD Officer Pritchard, assault and battery of six correctional officers, and malicious wounding. Id. The jury acquitted him of other charges of assault and battery. Id.

Based on the events that allegedly occurred at the LADC following his arrest, Moss filed this action under 42 U.S.C. § 1983. Liberally construed, his complaint asserts federal constitutional claims of excessive force, failure to intervene, deliberate indifference,

unreasonable search, and false imprisonment. He also asserts claims under state law, including for alleged statutory violations. The defendants are sued in their individual and official capacities.

## II.    Standard of Review

The defendants have moved to fully or partially dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed without the assistance of counsel "still must contain enough facts to state a

claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III.    Discussion

#### A.    Motion for Sanctions

Before addressing the sufficiency of Moss's allegations under Rule 12(b)(6), the court will first address the motion for sanctions that he filed in response to the defendants' motions. As noted above, defense counsel submitted copies of arrest warrants issued against Moss on February 13, 2021, including warrants charging him with assault and battery of three LPD officers: C. Harris, W. Witcher, and C. Pritchard. The arrest warrants were filed as an exhibit to the memorandum submitted in support of defendant White's motion to dismiss.

Based on an order entered in the Circuit Court for the City of Lynchburg on August 4, 2022, Moss argues that "Exhibit 1 of defendant's motion to dismiss is a fraudulent document and thus violates Rule 11(b) [of the Federal] Rules of Civil Procedure." Mot. for Sanctions, ECF No. 208, at 1. However, the order on which he relies provides no support for his argument. The order indicates that Moss proceeded to trial on multiple charges on August 4, 2022, including the charges of assault and battery of Officer Harris and Officer Pritchard, and that a jury found him "guilty of Assault and Battery of a Law Enforcement Officer (C. Pritchard) as charged in the indictment." Mot. for Sanctions Ex. 1, ECF No. 208-1, at 1 (emphasis added). Although the jury also found Moss "not guilty of Assault and Battery of a Law Enforcement Officer (C. Harris) as charged in the indictment," id. (emphasis added), his acquittal of that charge does not undermine the validity or legitimacy of the arrest warrants submitted by defense counsel. See, e.g., Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("The

9

validity of [an] arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest."); Ellis v District of Columbia, 84 F.3d 1413, 1423 (D.C. Cir. 1996) ("A defendant's acquittal does not show that he was wrongly arrested; it shows only that the government did not prove guilt beyond a reasonable doubt."). Accordingly, the motion for sanctions will be denied.

**B.    Claims under § 1983**

Moss filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Additionally, when a defendant is sued in their individual or personal capacity, a plaintiff "must 'affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights.'" Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (alterations omitted) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" Id. (quoting Iqbal, 556 U.S. at 676).

1.      **Excessive Force and Failure to Intervene**

Moss asserts claims of excessive force against multiple defendants arising from the events that allegedly occurred at the LADC on February 14, 15, and 19, 2021. He also seeks to hold defendants liable for failing to intervene in the use of excessive force.

Because Moss was a pretrial detainee during that period, his claims are governed by the Due Process Clause of the Fourteenth Amendment. Unlike the Eighth Amendment, which "only protects post-conviction detainees from 'cruel and unusual punishment,' the Fourteenth Amendment Due Process Clause protects pretrial detainees from being punished at all." Short v. Hartman, 87 F.4th 593, 606 (4th Cir. 2023) (citing Bell v. Wolfish, 441 U.S. 520, 535–37 & n.16 (1979)); see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) ("[T]he pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of punishment.") (emphasis in original). Accordingly, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Kingsley v. Hendrickson, 576 U.S. 389, 397–98 (2015) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)).

To prevail on a claim of excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. at 396–97. "[O]bjective reasonableness turns on the facts and circumstances of each particular case," and various factors, including the following, "may bear on the reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat

11

> reasonably perceived by the officer; and whether the plaintiff was
> actively resisting.

Id. at 397 (internal quotation marks omitted). Because the applicable standard is objective, "the defendant's state of mind is not a matter that a plaintiff is required to prove." Id. at 395. Instead, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id. at 398.

An officer who does not personally use excessive force against an individual may be subject to liability under § 1983 if he fails to intervene in the use of excessive force. Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002); see also McGrier v. City of New York, 849 F. App'x 268, 272 (2d Cir. 2021) ("To be found liable for excessive force, [the defendant] must have either used excessive force himself or failed to intervene, despite having a 'realistic opportunity' to do so, to prevent another officer from applying excessive force.") (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). This theory of liability, which is also known as "bystander liability," is "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Randall, 302 F.3d at 203. "Therefore, an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204.

### a.    Uses of force on February 14, 2021

Moss claims that Clark, Miller, Hamlett, and Barker used excessive force against him on February 14, 2021, after he "refused to complete the booking process." Compl. ¶ 44. Moss alleges that he refused to comply because he needed medical treatment for the injuries he

sustained during his arrest. As a result of his noncompliance, Hamlett "contaminated [him] with OC spray," while Clark, Miller, and Barker "physically assault[ed]" him. Id. ¶ 46. That same day, Clark and Hamlett completed a "Chemical Agent Use Report" that Enochs signed on February 16, 2021. Id. ¶ 62.

In moving to dismiss the claim against them, Clark, Miller, Hamlett, and Barker argue that Moss's allegations fail to show that the use of force was excessive, particularly in light of his admitted noncompliance with the booking process. However, "[a] detainee's refusal to comply with an officer's lawful order, without more, is not a license to 'take the gloves off.'" Sawyer v. Asbury, 537 F. App'x 283, 294 (4th Cir. 2013); see also Smith v. Kind, 140 F.4th 359, 368 (7th Cir. 2025) ("[I]nmates may not pick and choose which order to obey. But an inmate's passive disobedience, without more, does not in and of itself authorize unrestrained or extreme escalation of force."); Treats v. Morgan, 308 F.3d 868, 872–73 (8th Cir. 2002) ("Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions.") (internal citations omitted). Viewed in the light most favorable to Moss, the complaint plausibly alleges that the use of assaultive force by three officers while a fourth officer deployed OC spray was objectively unreasonable under the circumstances. Accordingly, the motion dismiss filed by Clark, Miller, Hamlett, and Barker will be denied with respect to this claim.

To the extent Moss seeks to hold Enochs responsible for the use of force on February 14, 2021, he fails to state a claim against Enochs. Moss does not allege that Enochs was present for the booking process or personally involved in the alleged misconduct that occurred on

that particular day. The mere fact that Enochs signed a report indicating that a chemical agent had been deployed on Moss does not provide a basis for liability under § 1983. See King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) ("[A] supervisor's 'mere knowledge' that his subordinates . . . engaged in unconstitutional conduct is not enough . . . . A plaintiff must show 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting Iqbal, 556 U.S. at 677). Accordingly, the motion to dismiss filed by Enochs will be granted with respect to this particular claim.

### b.    Uses of force on February 15, 2021

#### i.    Initial placement in restraint chair

Moss alleges that Clark agreed to assist him in obtaining medical treatment on February 15, 2021, if Moss complied with Clark's orders. Despite his compliance, Clark, Miller, Hamlett, and Barker placed him in a restraint chair with a spit hood over his head and left him unattended for seven hours, during which time he was forced to urinate and defecate on himself.

Moss's allegations, which must be accepted as true at this stage of the proceedings, allow the court to reasonably infer that Clark, Miller, Hamlett, and Barker used objectively unreasonable force in securing Moss to a restraint chair with his head covered for an extended period, even after he complied with Clark's orders. See, e.g., United States v. Hill, 99 F.4th 1289, 1304 (11th Cir. 2024) (holding that a jail official used constitutionally excessive force by "ordering compliant, nonresistant detainees who were in the secure jail environment into restraint chairs for at least four hours"); Jennings v. Alexander, No. 1:24-cv-00043, 2025 WL 1993410, at *3 (D. Md. July 17, 2025) ("Plaintiff alleges Defendants assaulted him, moved him

to a restraint chair, restrained him in the chair, and left him unattended for five or six hours, all because he declined to provide fingerprints upon request. No liberal construction is necessary; Plaintiff has stated a claim of excessive force against Defendants."). The motion to dismiss filed by Clark, Miller, Hamlett, and Barker will be denied with respect to this claim.

### ii.    Altercation with Henriquez, Winfield, and Phillips

Moss next alleges that he was involved in a "physical altercation" with Henriquez, Winfield, and Phillips, after being removed from a holding cell to complete the booking process. Compl. ¶ 68. During the altercation, Winfield and Henriquez pinned him to the ground, and Phillips deployed OC spray that came into contact with the lacerations on his face.

In moving to dismiss this claim, Henriquez, Winfield, and Phillips argue that merely pinning an individual to the ground is "trivial force" and that the use of OC spray is "not per se excessive force." Mem. Supp. Mot. Dismiss, ECF No. 179, at 5. However, when viewed in Moss's favor, the complaint suggests that he was sprayed in the face with OC spray while being held down by two officers. "Courts have . . . found that the use of pepper spray on inmates who are not handcuffed, but are otherwise confined, is not objectively reasonable." Kerr v. DelPeschio, No. 3:19-cv-00098, 2024 WL 148241, at *10 (D. Conn. Jan. 12, 2024) (collecting cases); see also Dean v. Jones, 984 F.3d 295, 304 (4th Cir. 2021) ("[W]hen officers do use force—including pepper spray—against a formerly recalcitrant inmate after he has been subdued, then a reasonable jury may infer that the force was applied not for protective reasons but instead to retaliate or punish."). Thus, at this stage of the proceedings, Moss states a plausible claim of excessive force based on his encounter with Henriquez, Winfield, and

Phillips. The motion to dismiss filed by these three defendants will be denied with respect to this claim.

### iii.    Second placement in restraint chair

Moss alleges that immediately after being sprayed with OC spray, he was placed in a restraint chair again without being decontaminated from the spray. He alleges that Henriquez, Gray, Canzone, Mullins, Broggins, Roberts, Salmon, Vosper, and Fanning participated in or observed his confinement in the restraint chair; that his hands were cuffed behind his back and a spit hood was placed over his head; and that he remained in the chair for eight hours while being forced to urinate and defecate on himself. These allegations, when viewed in combination and in the light most favorable to Moss, state a plausible claim of excessive force and/or failure to intervene. See Jacoby v. Baldwin Cnty., 666 F. App'x 759, 765–66 (11th Cir. 2016) (concluding that a district court erred in granting summary judgment on a pretrial detainee's claim that offers used excessive force in violation of the Fourteenth Amendment by confining him in a restraint chair after he was pepper sprayed and leaving him there for eight hours in pepper-sprayed and urine-soaked clothing); Williams v. Benjamin, 77 F.3d 756, 765 (4th Cir. 1996) (concluding that a district court erred in granting summary judgment on a prisoner's claim that officers used excessive force in violation of the Eighth Amendment "by retaining him in four-point restraints in a mace-filled cell for eight hours, without allowing him to wash off the mace or providing him with any medical care, or even the use of a toilet"); see also Danley v. Allen, 540 F.3d 1298, 1308 (11th Cir. 2008) ("[S]ubjecting a prisoner to special confinement that causes him to suffer increased effects of environmental conditions—here, the pepper spray lingering in the air and on him—can constitute excessive force."). The

16

motions to dismiss filed by the above-named defendants will be denied with respect to this claim.

### iv.     Deployment of OC spray and punches in a holding cell

According to the complaint, after being confined in the restraint chair for the second time on February 15, 2021, Moss was escorted back to a holding cell. While in the cell with the door closed, Moss was sprayed with OC spray by Enochs. Although Moss subsequently backed away from the cell door and complied with Enochs's order to get on the ground in a prone position, Enochs ordered other officers to place Moss in a restraint chair again. When Moss jumped to his feet and raised his hands in the air to protest the order, Bachelle deployed a second round of OC spray. While Moss was unable to breathe or see as a result of the OC spray, Enochs, Bachelle, Strader, Knichel, and Iovenetti "began punching [Moss] with closed fist[s]" and "violently took [him] to the ground inside of the cell." Compl. ¶ 86.

In moving to dismiss any claim arising from this series of events, the above-named defendants argue that the complaint "fails to allege facts to show the alleged force was an unreasonable response to the threat [Moss] presented." Mem. Supp. M. Dismiss, ECF No. 169, at 8. This argument, however, overlooks the fact that Moss alleges that he was in a closed cell at the time these additional uses of force were initiated and that the use of violent punches occurred after he had been incapacitated by OC spray. While the defendants may be able to show on summary judgment that Moss continued to pose a threat to the security and order of the facility or the officers' safety, his allegations are sufficient to withstand a motion to

dismiss.[4] Accordingly, the motions to dismiss filed by the above-named defendants will be denied with respect to this claim.

### c.    Uses of force on February 19, 2021

Moss claims that defendants used excessive force against him again on February 19, 2021, after he stuck his arm through the tray slot of his cell door to protest his conditions of confinement and failed to comply with Enochs's order to remove his arm. Moss alleges that Enochs deployed OC spray in his face; that Iovenetti injured his arm by placing him in a "military style arm bar" after he had been contaminated with OC spray and while he was being restrained on his stomach by six officers; and that Enochs, Strader, Tighe, and Gray "repeatedly punched" him in the face, causing a serious nose injury. Compl. ¶¶ 96–97, 103–04. Enochs, Strader, Merrill, Gray, Tighe, Canzone, Knichel, Iovenetti, Wallace, Bachelle, Lucas, and Fanning then participated in placing Moss in a restraint chair with a spit hood over his head. Id. ¶ 98. Moss alleges that he remained in the chair with his head covered for approximately nine hours at Broggins's direction, despite being contaminated with OC spray and suffering from a severe nose injury; that he "almost died while in the restraint chair"; and that McDonald and Bachelle failed to intervene despite promising to do so. Id. ¶¶ 100–01, 107–08.

Enochs, Strader, Tighe, and Gray acknowledge that the complaint states a plausible claim of excessive force arising from their alleged actions on February 19, 2021. See Mem. Supp. Mot. Dismiss, ECF No. 169, at 3 (seeking dismissal of all claims "except the excessive

---

[4] As noted above, state court records indicate that Moss was convicted of assault and battery against correctional officers named as defendants. The facts supporting those convictions may be relevant evidence at summary judgment. At this stage, the court's task is limited to determining whether the complaint "states a plausible claim for relief." Iqbal, 556 U.S. at 679.

force claim arising from Enochs' alleged actions on February 19, 2021"); Gray's Partial Mot. Dismiss, ECF No. 197, at 1 (same); Strader's Partial Mot. Dismiss, ECF No. 200, at 1 (same); Tighe's Partial Mot. Dismiss, ECF No. 201, at 1 (same). The other defendants identified above argue that the complaint fails to state a claim against them. The court disagrees.

Turning first to Iovenetti's alleged use of a "military style arm bar" maneuver that injured Moss's arm, Iovenetti argues that the use of such force is not "per se excessive" and that the complaint is "devoid of details to demonstrate this action was unreasonable in light of Plaintiff's resistance." Mem. Supp. Mot. Dismiss, ECF No. 171, at 7. However, Moss does not allege that he was actively resisting at the time Iovenetti forcefully manipulated his arm. Instead, he alleges that Iovenetti did so "while [he] was being restrained on his stomach by roughly six officers" and after he had already been contaminated with OC spray. Compl. ¶ 103. It is "clearly established that 'force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated.'" Gallmon v. Cooper, 801 F. App'x 112, 115 (4th Cir. 2020) (quoting Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005)). Moss's allegations allow the court to reasonably infer that Iovenetti used a maneuver forceful enough to injure his arm after he had been restrained by other officers. Such allegations are sufficient to state a claim of excessive force against Iovenetti. See Timpa v. Dillard, 20 F.4th 1020, 1034 (5th Cir. 2021) (citing circuit precedent clearly establishing "that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable").

Iovenetti and other defendants also argue that "the placement of an inmate in a restraint chair and spit hood . . . is insignificant force that does not rise to the level of an

excessive force claim." Mem. Supp. Mot. Dismiss, ECF No. 171, at 6. This argument ignores other allegations in the complaint. As noted above, Moss alleges that Iovenetti and other defendants placed him in a restraint chair with a spit hood over his head after he had been sprayed with OC spray and without decontaminating first, that he remained in the restraint chair for nine hours while suffering from a severely injured nose and the effects of the OC spray, and that he almost died while restrained in the chair. These allegations allow the court to reasonably infer that Moss was subjected to the type of punishment prohibited by the Due Process Clause of the Fourteenth Amendment.

Iovenetti and other defendants alternatively argue that the complaint does not adequately describe each defendant's role in placing him in the restraint chair. While the defendants correctly note that "it must be 'affirmatively shown that the official charge acted personally in the deprivation of the plaintiff's rights,'" Mem. Supp. Mot. Dismiss, ECF No. 171, at 6 (quoting Wright, 766 F.2d at 850), Moss's complaint satisfies this requirement with respect to those defendants who participated in or observed his extended confinement in the restraint chair. He alleges that Iovenetti and 11 other defendants personally participated in "placing the severely injured plaintiff's person in a restraint chair" with a spit hood over his head, after he had been contaminated with OC spray, and that McDonald and Bachelle failed to intervene despite promising to do so. Compl. ¶¶ 98, 108. The fact that he does not identify each defendant's specific role in the restraint process is not fatal to his force-related claims against the above-named defendants at this stage of the proceedings. See Estate of Booker v. Gomez, 745 F.3d 405, 422 (10th Cir. 2014) (holding that the district court did not err in failing to conduct an individualized inquiry of each deputy's actions, since the facts showed that all

of the defendants "actively and jointly participated in the use of force, and . . . even if a single deputy's participation did not constitute excessive force, that deputy could be liable under a failure-to-intervene theory"); Skritch v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002) (rejecting "the argument that the force administered by each defendant in [a] collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force," and noting that an officer can be held liable if he actively participates in the use of excessive force or "is present at the scene and . . . fails to take reasonable steps to protect the victim of another officer's use of excessive force"); Williams v. Atkins, 333 F. Supp. 2d 209, 213-14 (S.D.N.Y. 2004) (rejecting a similar argument and noting that "it is unfair to say that because a plaintiff, who was handcuffed, pinned face down and sprayed in the face with pepper spray, cannot identify which of the two officers struck him, therefore the defendants should be granted summary judgment").

For these reasons, the motions to dismiss filed by Iovenetti, Merrill, Canzone, Knichel, Wallace, Bachelle, McDonald, Lucas, and Fanning will be denied with respect to this claim.

### d.    Lack of personal involvement by certain defendants

To the extent Moss seeks to hold defendants Trent, Hodges, Mitchell, and Jones liable for excessive force, either as a direct participant or as a bystander, his complaint fails to state a claim against these defendants. The only factual allegations against Trent, Hodges, Mitchell, and Jones relate to their employment duties. Moss alleges that Trent is responsible for the "overall operation" of the LADC as the Administrator of the BRRJA. Compl. ¶ 4. He alleges that Hodges "held the rank of Captain" at the LADC and that Mitchell and Jones "held the position of Nurse." Id. ¶¶ 7, 16. These allegations are insufficient to show that Trent, Hodges,

Mitchell, and Jones were personally involved in the use of excessive force, either as a direct participant or as a bystander. To the extent Moss seeks to hold these defendants vicariously liable for the use of excessive force by other defendants, vicarious liability is not a basis for recovery under § 1983. See Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Accordingly, the motion to dismiss filed by Trent, Hodges, Mitchell, and Jones will be granted with respect to any claim of excessive force or failure to intervene asserted against them.

The court also concludes that the complaint lacks sufficient factual allegations to support a claim of excessive force or failure to intervene against White, Lambert, Ayers, Allen, Harris, Newland, and Smith. Although Moss alleges that these defendants failed to respond to his requests for medical care after he was arrested and detained at the LADC, he does not allege that they used force against him or were present for the use-of-force incidents described in the complaint. Consequently, the motions to dismiss filed by White, Lambert, Ayers, Allen, Harris, Newland, and Smith will be granted with respect to any claim of excessive force or failure to intervene asserted against them.

### 2.    Deliberate indifference

Moss asserts that the following defendants acted with deliberate indifference to his serious medical needs: Enochs, Hodges, Lambert, Smith, Winfield, Clark, Broggins, Roberts, Newland, Draper, Miller, Barker, Phillips, Millner, Gray, White, Henriquez, Iovenetti, Mullins, Canzone, Bachelle, McDonald, Strader, Knichel, Wallace, Hamlett, Tighe, Bonner, Allen, Harris, Patrick, Merrill, Mitchell, Vosper, Fanning, Lucas, Jones, and Ayers. Compl. ¶ 146. The

needs include (but are not limited to) those associated with his conditions of confinement in the restraint chair. See id. ¶ 121 ("Confining the Plaintiff to a restraint chair under extremely inhumane conditions of confinement and for extremely inhumane periods of time caused permanent and significant impairment to the Plaintiff's internal body.").

Because Moss was pretrial detainee at the time of the events at issue, his claims of deliberate indifference are governed by the Due Process Clause of the Fourteenth Amendment and must be evaluated "based on a purely objective standard." Short, 87 F.4th at 604–05; see also id. at 611 ("[I]t is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable.'") (quoting Kingsley, 576 U.S. at 397). "To state a claim for deliberate indifference to a medical need, . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." Id. at 611. "To state a claim for deliberate indifference based on conditions of confinement," a pretrial detainee "must allege a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of such serious harm resulting from [his] unwilling exposure to the challenged conditions," and he must "show that the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Hammock v. Watts, --- F.4th ----, 2025 WL 2054852, at *4 (4th Cir. July 23, 2025) (internal quotation marks omitted).

23

All of the above-named defendants have moved to dismiss the claims of deliberate indifference asserted against them. The court will address each group of defendants in turn.

### a.    Clark, Miller, Barker, and Hamlett

Moss alleges that Clark, Miller, Barker, and Hamlett were responsible for placing him into detention after he arrived at the LADC with multiple physical injuries on February 13, 2021, including a "severe head injury," multiple facial lacerations, "severe swelling" to his face and body, an injury to his penis, and "severe muscle and/or joint" injuries. Compl. ¶¶ 26–28. Moss alleges that he repeatedly requested medical care after he arrived at the facility and that Clark, Miller, Barker, and Hamlett "refused to provide medical care" from the time he arrived until their shift ended the following day. Id. ¶¶ 41, 45.

Moss's allegations against these defendants are sufficient to state a claim for deliberate indifference at this stage of the proceedings. See Krell v. Braightmeyer, 828 F. App'x 155, 159 (4th Cir. 2020) ("As the district court correctly held, a plaintiff can maintain a deliberate indifference claim based solely on the theory that the defendant withheld, delayed, or interfered with medical treatment . . . . As a result, . . . evidence that Defendants failed to provide medical care for Krell's substantial [shoulder] pain [during the three hours Krell spent in Defendants' care] is enough to prevail on a claim of deliberate indifference."); Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008) (emphasizing that "[a] delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate-indifference claim" and concluding that jail guards could be liable for delaying treatment for a detainee's broken nose); Burns v. Ashraf, No. 1:18-cv-03100, 2019 WL 4169838, at *7 (D. Md. Sept. 3, 2019) (concluding that a pretrial detainee stated a claim for

deliberate indifference against a nurse and an officer who failed to appropriately respond after the detainee fell in his cell, cutting open a gash on his face); Harrison v. Prince William Cnty. Police Dep't, 640 F. Supp. 2d 688, 704–05 (E.D. Va. 2009) (concluding that a pretrial detainee who had visible signs of trauma to his face after being tackled and hitting his head during the course of his arrest stated a claim for deliberate indifference against the officers who allegedly denied his requests for medical treatment). Accordingly, the motion to dismiss filed by Clark, Miller, Barker, and Hamlett will be denied with respect to this claim.

    **b.**    **White, Lambert, Ayers, Allen, Harris, Newland, and Smith**

For similar reasons, the court will allow Moss's claims of deliberate indifference against White, Lambert, Ayers, Allen, Harris, Newland, and Smith to proceed. Moss alleges that he "spoke in person" to White and Lambert on February 14, 2021. Compl. ¶ 42. At that point, according to the complaint, Moss had still not received any medical treatment for the injuries he allegedly sustained during his arrest. Nonetheless, White and Lambert "failed to respond to [his] repeated requests for medical care." Id. ¶ 43. Similarly, Moss alleges that Ayers refused to treat him from February 13, 2021, until February 19, 2021, and that Allen, Harris, Newland, and Smith "failed to reasonably respond to any of [his] requests for medical care" during that same period, despite interacting with him in person and therefore having the opportunity to observe the injuries he alleged sustained during and after his arrest. Id. ¶¶ 65, 110, 120. Moss alleges that he did not receive any medical treatment until he was moved to the Rockbridge Regional Jail on February 19, 2021. See id. ¶¶ 93, 125.

"Well-established Fourth Circuit case law indicates that guards who intentionally ignore pleas for medical care from inmates in obvious pain or with obvious injuries" may be subject

to liability for deliberate indifference. Greene v. Cnty. of Durham Office of the Sheriff Dep't, No. 1:14-cv-00153, 2014 WL 5465371, at *4 (M.D.N.C. Oct. 28, 2014) (collecting cases). The same is true for healthcare providers at a correctional facility. See Pfaller v. Amonette, 55 F.4th 436, 453 (4th Cir. 2022) (noting that "refusal to treat serious medical needs can constitute deliberate indifference") (citing Jehovah v. Clarke, 798 F.3d 169, 181-82 (4th Cir. 2015)). "Each [government] actor who encounters a detainee must reasonably respond to medical complaints." Ortiz v. City of Chicago, 656 F.3d 523, 531 (7th Cir. 2011); see also Tarashuk v. Givens, 53 F.4th 154, 163 (4th Cir. 2022) (emphasizing that "[t]he Supreme Court has long held that a pretrial detainee has a right to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment" and that this right encompasses a "right to adequate medical care"). Because the complaint plausibly alleges that White, Lambert, Ayers, Allen, Harris, Newland, and Smith acted in an "objectively unreasonable" manner in response to Moss's medical needs, Short, 87 F. 4th at 611, their motions to dismiss will be denied with respect to the claims of deliberate indifference asserted against them.

### c. Enochs, Broggins, Roberts, Gray, Tigue, Henriquez, Iovenetti, Mullins, Canzone, Bachelle, McDonald, Strader, Knichel, Wallace, Hamlett, Merrill, Vosper, Fanning, and Lucas

According to the complaint, Enochs, Broggins, Roberts, Gray, Tigue, Henriquez, Iovenetti, Mullins, Canzone, Bachelle, McDonald, Strader, Knichel, Wallace, Hamlett, Merrill, Vosper, Fanning, and Lucas participated in or observed his confinement in a restraint chair for an extended period with a spit hood over his head and his hands cuffed behind his back, after he had been subjected to OC spray. Moss alleges that the OC spray came into contact with lacerations on his face and affected his ability to see and breathe, and that he was not

26

decontaminated before being restrained with his head covered for between seven and nine hours. Moss alleges that he "almost died" while restrained for the nine-hour period and that his conditions of confinement resulted in "irreparable mental injury" and a "permanent and significant" shoulder impairment. Compl. ¶¶ 73, 101, 119.

At this stage of the proceedings, Moss's allegations are sufficient to state a claim of deliberate indifference against the above-named defendants. In moving to dismiss any claim of deliberate indifference associated with his placement in a restraint chair after being contaminated with OC spray, the defendants rely on the Fourth Circuit's decision in Moskos v. Hardee, 24 F.4th 289 (4th Cir. 2022). In that case, which proceeded to trial, the district court granted judgment as a matter of law to the defendants on a convicted inmate's claim that the defendants violated the Eighth Amendment by failing to decontaminate him after being exposed to pepper spray. The evidence at trial revealed that the inmate "experienced the usual transitory effects of pepper spray for a period of, at most, 90 to 120 minutes" before being decontaminated. Id. at 298. Given the "short delay in decontamination, without any aggravating factors such as a serious medical reaction," the Fourth Circuit concluded that the district court properly granted judgment as a matter of law on the Eighth Amendment claim of deliberate indifference. Id.

The facts alleged in this case, when viewed in Moss's favor, are plainly distinguishable from those in Moskos. Moss alleges that he was restrained for between seven and nine hours without being decontaminated from OC spray; that he was forced to wear a spit hood over his head after being sprayed; that the OC spray affected his ability to see and breathe; that he nearly died during the nine-hour stint that occurred on February 19, 2021; and that he suffered

27

emotional harm and a permanent injury to his shoulders. These allegations, at the Rule 12(b)(6)

stage, are sufficient to establish "a serious or significant physical or emotional injury resulting

from the challenged conditions" or "a substantial risk of such serious harm." Hammock, 2025

WL 2025 WL 2054852, at *4 (quoting Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)).

Moss's allegations also plausibly suggest that the named defendants responsible for subjecting

him to the challenged conditions of confinement "acted or failed to act 'in the face of an

unjustifiably high risk of harm that is either known or so obvious that it should be known.'"

Short, 87 F.4th at 612 (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). This is "enough"

to state a claim for deliberate indifference under the Fourteenth Amendment. Id.

### d.    Winfield and Phillips

Winfield and Phillips, along with Henriquez, were involved in the altercation that

occurred on February 15, 2021, during which OC spray came into contact with the lacerations

on Moss's face. Unlike Henriquez, however, Winfield and Phillips are not alleged to have been

involved in subsequently placing Moss in a restraint chair with a spit hood over his head and

without decontaminating him first. Nor does Moss allege that Winfield and Phillips observed

him being placed in the restraint chair following the deployment of OC spray or his continued

confinement in the chair for multiple hours after being sprayed. Consequently, the court

concludes that the complaint fails to state a claim of deliberate indifference against Winfield

and Phillips. Their motion to dismiss will be granted with respect to this claim.

### e.    Hodges, Mitchell, Jones, Draper, Millner, Bonner, and Patrick

Although Moss names Hodges, Mitchell, Jones, Draper, Millner, Bonner, and Patrick

as defendants with respect to his claims of deliberate indifference, he provides no indication

28

as to how they were personally involved in the alleged constitutional violations. As indicated above, the complaint merely describes the particular jobs that Hodges, Mitchell, and Jones held during the relevant time period. Similarly, the only allegation specific to Draper is that he "was in charge of the intake unit . . . where the incidents described in this complaint occurred," Compl. ¶ 108, and the only allegation specific to Millner, Bonner, and Patrick is that they were "intake unit officers . . . where the incidents described in this complaint occurred," id. ¶ 109. The mere fact that these defendants supervised or worked at the LADC during the time period in question is insufficient to support a plausible claim of deliberate indifference. See Langford v. Joyner, 62 F.4th 122, 125 (4th Cir. 2023) (affirming the dismissal of a claim of deliberate indifference filed by a federal inmate where the inmate "did not identify who the Defendants are beyond being employees at FCI Estill, in what capacity each Defendant interacted with [him], or how (or even if) each Defendant was responsible for [his] medical treatment"). Accordingly, the motions to dismiss filed on behalf of Hodges, Mitchell, Jones, Draper, Millner, Bonner, and Patrick will be granted with respect to the claims of deliberate indifference asserted against them.

### 3.    Unreasonable search

Moss claims that Clark "sexually assaulted" him "while effectuating an unlawful strip search." Compl. ¶ 31. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Johnson v. Robinette, 105

F.4th 99, 113 (4th Cir. 2024) (internal quotation marks omitted). "Therefore, to be constitutional, a search must not be unreasonable." Id. (internal quotation marks omitted).

When a search involves the removal or movement of clothing to inspect an individual's naked body, "the search qualifies as a type of sexually invasive search." Id. (internal quotation marks omitted). "And '[w]hen the scope of a search exceeds a visual inspection of an individual's naked body, the magnitude of the intrusion is even greater.'" Id. (quoting Sims v. Labowitz, 885 F.3d 254, 261 (4th Cir. 2018)). "To determine whether a sexually invasive search was constitutionally unreasonable, [courts] apply the balancing test adopted by the Supreme Court in [Bell v. Wolfish, 441 U.S. 520 (1979)]." Id. at 114. The test "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. Courts "must 'examine the search in its complete context and consider the following factors: (1) the scope of the particular intrusion; (2) the manner in which the search was performed; (3) the justification for initiating the search; and (4) the place in which the search was performed.'" Johnson, 105 F.4th at 114 (quoting Sims, 885 F.3d at 261).

In moving to dismiss this claim, Clark correctly notes that a jail or detention facility is "a unique place fraught with serious security dangers" and that the "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence." Bell, 441 U.S. at 599. "Given the importance of maintaining internal security—and the severe threat contraband poses to that security," the Supreme Court has held "that a county jail could constitutionally require all inmates, including those arrested for minor offenses, to submit to visual strip searches as part of the process of being admitted to the jail's general population."

Calloway v. Lokey, 948 F.3d 194, 201 (4th Cir. 2020) (citing Florence v. Bd. of Chosen
Freeholders, 566 U.S. 318, 330 (2012)). Appellate courts have also recognized that "[p]rison
officials looking for contraband may subject inmates to reasonable strip searches and cavity
searches." Johnson, 105 F.4th at 115 (quoting Crawford v. Cuomo, 796 F.3d 252, 258 (2d Cir.
2015)). Although "the fact that an inmate is momentarily, incidentally, or accidentally touched
during a strip search does not alone render the search unreasonable," strip searches "should
not be performed in degrading, humiliating, or abusive fashion." Id. at 117–118 (internal
quotation marks omitted).

Here, Moss's complaint, when viewed in his favor, does not describe the sort of
incidental or accidental touching that courts have found to pass muster under the Fourth
Amendment. Instead, he alleges that while being subjected to a strip search, Clark groped his
genitals in such a manner as to constitute a sexual assault. Courts have found similar allegations
sufficient to withstand dismissal under Rule 12(b)(6). See, e.g., Hill v. Tyburski, No. 3:19-cv-
01674, 2020 WL 1914929, at *3 (D. Conn. Apr. 19, 2020) (concluding that a pretrial detainee
stated a plausible Fourth Amendment claim based on allegations that he was subjected to a
body cavity search during which officers "groped and spread his buttocks apart");
Weatherington v. Rios, No. 1:14-v-00906, 2017 WL 896302, at *4 (E.D. Cal. Mar. 6, 2017)
(finding that an inmate stated a cognizable Fourth Amendment claim against an officer who
allegedly "fondled [his] genitals during a pat down search in a malicious and sadistic way")
(internal quotation marks omitted); Dickey v. United States, 174 F. Supp. 3d 366, 371 (D.D.C.
2016) (allowing a Fourth Amendment claim to proceed where an arrestee alleged that his
"genitals were fondled in such a way as to constitute a 'sexual assault'" and emphasizing that

"[a] thorough search of the groin area is distinct from the fondling of genitalia"). Consistent with these decisions, the court concludes that Moss has a stated a plausible Fourth Amendment claim against Clark.

Clark alternatively argues that the claim is barred by the two-year statute of limitations applicable to § 1983 claims. See Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991) ("There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied. Wilson v. Garcia, 471 U.S. 261, 280 (1985). Virginia has a two-year statute of limitations for personal injury claims. Va. Code Ann. § 8.01-243(A)."). "[T]he statute of limitations is an affirmative defense, meaning that the defendant[s] generally bear[] the burden of affirmatively pleading its existence." Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 (4th Cir. 2006) (citing Fed. R. Civ. P. 8(c)). Although a motion to dismiss under Rule 12(b)(6) "invites an inquiry into the legal sufficiency of the complaint" rather than "an analysis of potential defenses," Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996), an affirmative defense may be addressed through a motion to dismiss when facts sufficient to rule on the defense are "alleged in the complaint," Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense clearly appear on the face of the complaint." Id. (emphasis in original) (internal quotation marks and alterations omitted).

In arguing that Moss failed to comply with the applicable two-year statute of limitations, Clark emphasizes that the strip search is alleged to have occurred on February 13, 2021, and that the envelope containing Moss's complaint has a postmark date of February 14, 2023. Since Clark was incarcerated at the time he filed this action, the "prison mailbox rule"

applies. Under this rule, a complaint or other pleading is deemed filed at the time an inmate "delivered it to the prison authorities for forwarding to the court clerk." Houston v. Lack, 487 U.S. 266, 276 (1988). Courts have recognized that a postmark date on an envelope is not necessarily the date on which a pleading was delivered to prison authorities for purposes of the prison mailbox rule. "Absent evidence to the contrary," courts often "assume that a prisoner delivered a filing to prison authorities on the date he signed it." Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir. 2014) (emphasis added); see also Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014) ("We assume that Butler turned his petition over to prison authorities on the same day he signed it and apply the mailbox rule."); Brand v. Motley, 526 F.3d 921, 925 (6th Cir. 2008) ("Under [the prison mailbox rule], a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding over this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." ); Brown v. Clarke, No. 1:23-cv-00315, 2024 WL 4486179, at *2 (E.D. Va. Sept. 13, 2024) ("Plaintiff signed and dated the Complaint on February 17, 2023. The Court treats this as the date the Complaint was mailed and 'filed.'") (internal citation omitted).

Moss's complaint indicates that it was signed on February 12, 2023, shortly less than two years after the search allegedly occurred. See Compl. at 43. Because it is not clear from the face of the complaint that the two-year statute of limitations expired before Moss delivered the complaint to jail officials for mailing, the search-related Fourth Amendment claim cannot be dismissed as untimely under Rule 12(b)(6). For these reasons, the motion to dismiss filed by Clark and other defendants will be denied with respect to this claim.

### 4.    False imprisonment

Moss alleges that he was "under the supervision" of Clark and other defendants "while being subjected to false imprisonment" at the LADC and that defendants White and Lambert refused to take him to see a magistrate. Compl. ¶¶ 36, 43. Although the record includes copies of arrest warrants issued by a magistrate on February 13, 2021, Moss asserts that his confinement at the LADC was "predicated upon an unlawful arrest," "forged" warrants, and "a complete void in [his] appearance before a judicial officer for a probable cause determination for [his] warrantless arrest and ensuing detention." Compl. ¶ 19.

The court, like the defendants, construes the complaint to allege that Moss was unreasonably seized in violation of the Fourth Amendment. See Manuel v. City of Joliet, 580 U.S. 357, 365 (2017) ("The Fourth Amendment . . . establishes the minimum constitutional standards and procedures not just for arrest but also for ensuing detention.") (internal quotation marks omitted); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (noting that "false arrest and false imprisonment claims . . . are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"). "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." Brooks, 85 F.3d at 183; see also Manuel, 850 U.S. at 367 ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause."). Thus, "[to] state a claim for false arrest or imprisonment under § 1983, a plaintiff must demonstrate that he was arrested without probable cause." Sowers v. City of Charlotte, 659 F. App'x 738, 739 (4th Cir. 2016).

Here, Moss does not assert, must less plausibly show, that he was arrested and detained without probable cause. Instead, he alleges that his arrest was predicated on "forged" warrants, without identifying what he believes was forged. In any event, "[t]he Fourth Amendment prohibits unreasonable searches and seizures, not warrantless ones." Graves v. Mahoning Cnty., 821 F.3d 772, 775 (6th Cir. 2016) (internal quotation marks omitted). Consequently, "plaintiffs may not prevail merely by showing that they were arrested with defective warrants; they must show that they were unreasonably seized." Id. (emphasis in original). Without facts demonstrating that Moss was arrested and detained without probable to believe that an offense had been committed, he "cannot state a Fourth Amendment § 1983 claim against anyone."[5] Id. at 776; see also Robinson v. City of South Charleston, 662 F. App'x 216, 221 (4th Cir. 2016) (observing that "probable cause is sufficient to justify a public arrest under the Fourth Amendment, regardless of the validity of the arrest warrants obtained by the officers or any deficiencies in the affidavits supporting them") (citing Graves, supra); Mateo v. Deleon, No. 3:23-cv-23229, 2024 WL 1461328, at *2 n.2 (D.N.J. Apr. 4, 2024) (noting that because the plaintiff "failed to plead facts to imply that even the arresting officers lacked probable cause," he could not "make out a plausible false imprisonment claim on the downstream state actors who relied on those officers in accepting [him] into custody").

---

[5] "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." District of Columbia v. Wesby, 583 U.S. 48, 54 n.2 (2018) (emphasis added). Here, state court records indicate that a grand jury indicted Moss on some of the same charges for which warrants were issued for his arrest. "By law, 'an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause.'" Smith v. Munday, 848 F.3d 248, 255 (4th Cir. 2017) (quoting Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012)).

To the extent Moss complains about being denied access to a magistrate on February 14 and 15, 2021, he appears to contend that he was entitled to <u>personally</u> appear before a magistrate to determine whether there was probable cause for his arrest. <u>See</u> Compl. ¶ 19 (alleging that there was "a complete void in [his] appearance before a judicial officer for a probable cause determination"). However, the Fourth Amendment imposes no such requirement. As the Fourth Circuit explained more than 35 years ago:

> The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. This determination does not involve any adversarial rights, and can be based entirely on hearsay and written testimony. The Supreme Court has repeatedly endorsed these informal methods of proof as sufficient to create probable cause for arrest. <u>See</u> <u>Gerstein v. Pugh</u>, 420 U.S. 103, 114 (1975). In <u>Gerstein v. Pugh</u>, the Supreme Court sought to put persons arrested without a warrant on the same footing as those arrested under a previously issued warrant. Thus, it required a post-arrest judicial determination of probable cause in cases of warrantless arrests. 420 U.S. at 114. The process required by the court is one that would not allow arrest unless a judicial determination of probable cause was made "either before or promptly after arrest." 420 U.S. at 125.
>
> The post-arrest <u>Gerstein v. Pugh</u> hearing is required to fulfill the same function for suspects arrested without warrants as the pre-arrest probable cause hearing fulfills for suspects arrested with warrants. One who has had an arrest warrant issued before his arrest has had no opportunity to appear physically before the issuing magistrate during the probable cause determination. There is likewise no reason to require such an appearance at the post-arrest probable cause determination.

<u>King v. Jones</u>, 824 F.2d 324, 326–27 (4th Cir. 1987). Thus, Moss, had no Fourth Amendment "right to a face-to-face appearance before the magistrate during the probable cause determination." <u>Id.</u> at 327; <u>accord</u> <u>Strepka v. Miller</u>, 28 F. App'x 823, 827–28 (10th Cir. 2021) ("The determination of probable cause . . . can be made ex parte, without the presence of the

arrestee."); <u>Jones v. City of Santa Monica</u>, 382 F.3d 1052, 1056 (9th Cir. 2004) ("Just as

probable cause for an arrest warrant may be determined without an appearance by the suspect,

so may probable cause for detention after a warrantless arrest."); <u>Garcia v. City of Chicago</u>, 24

F.3d 966, 969 (7th Cir. 1994) ("The Fourth Amendment . . . does not require that probable

cause hearings be adversarial in nature; the Fourth Amendment allows the issuance of warrants

in the absence of the arrestees, and its scope does not expand for probable cause

determinations that take place after arrests.") (internal citations omitted); <u>Jones v. Town of

Marion</u>, 28 Va. App. 791, 797, 508 S.E.2d 921, 924 (Va. Ct. App. 1999) ("The Fourth

Amendment . . . does not mandate a personal appearance of the accused at the probable cause

determination and certainly does not require that the accused and arresting officer appear

together before the magistrate.").[6]

Additionally, Moss does not allege that any of the named defendants were involved in

obtaining the warrants for his arrest on February 13, 2021, or set forth facts sufficient to show

that the arrest warrants were facially invalid. "Since an adversary hearing is not required, and

since the probable-cause standard for pretrial detention is the same as that for arrest, a person

arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not

---

[6] In <u>Jones v. Town of Marion</u>, the state appellate court recognized that a Virginia statute requires that
an individual arrested without a warrant "be brought 'forthwith' before a magistrate" for a determination of
probable cause. 28 Va. App. at 798, 508 S.E.2d at 925 (citing Va. Code Ann. § 19.2-82). Nonetheless, the court
concluded that the alleged "procedural irregularity" did not "result[] in infringement of a constitutional right."
28 Va. App. at 797–98, 508 S.E.2d at 924–25. Indeed, it is firmly established that "state law [does] not alter the
content of the Fourth Amendment" and that "state restrictions [on arrests] do not alter the Fourth
Amendment's protections." <u>Virginia v. Moore</u>, 553 U.S. 164, 172, 176 (2008). Likewise, "[i]f state law grants
more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is
not a federal due process issue." <u>Riccio v. Cnty. of Fairfax</u>, 907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, a
mere violation of Va. Code § 19.2-82 or any other state statute does not give rise to a constitutional claim under
§ 1983.

constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." Baker v. McCollan, 443 U.S. 137, 143 (1979). Likewise, once probable cause has been established, the officials charged with maintaining custody of an individual are not "required by the Constitution to investigate independently every claim of innocence" or compelled "by the Constitution to perform an error-free investigation of such a claim." Id. at 146. "The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." Id.; see also Thurston v. Frye, 99 F.4th 665, 677 n.12 (4th Cir. 2024) ("After a warrant issues, officers have a sworn duty to carry out its provisions . . . . [A]s long as the previously issued warrant is not so facially deficient . . . that the executing officers cannot reasonably presume it to be valid, a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in executing it. That is because, in the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.") (internal quotation marks omitted) (second alteration in original).

For these reasons, the court concludes that the complaint fails to state a plausible Fourth Amendment claim of false imprisonment against any of the named defendants. The defendants' motions to dismiss will be granted with respect to this claim.[7]

---

[7] In light of the court's decision, the court finds it unnecessary to address the defendants' argument that any claim for damages based on false imprisonment would be barred pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), since Moss was convicted of at least one of the felony offenses for which he was arrested. In any event, the court notes that "Heck does not automatically bar [all] claims of false arrest and imprisonment." Olick v. Pennsylvania, 739 F. App'x 722, 726 (3d Cir. 2018); see also Clayton v. Johnson, No. 23-7146, 2025 WL 1303950, at *1–2 (4th Cir. May 6, 2025) (emphasizing that "[n]ot all § 1983 claims bearing some relationship to a valid criminal judgment are Heck-barred" and remanding for further consideration of whether claims of false arrest and false imprisonment necessarily implied the invalidity of the appellant's convictions).

5.    **Official-capacity claims**

Moss sued all of the defendants in their individual and official capacities. An action against a public employee in their official capacity is equivalent to an action against the individual's public employer. See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moss alleges that all of the defendants were employed by the BRRJA during the relevant time period.

It is well settled that municipal entities "are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011) (citing Monell, 436 U.S. at 692). Instead, they are responsible only for their "own illegal acts." Owens v. Balt. City State's Attys. Office, 767 F.3d 379, 402 (4th Cir. 2014). In particular, a municipal jail authority or other local government entity can be held liable under § 1983 only if the plaintiff shows that the entity's policy or custom was a "moving force" behind a constitutional violation. Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981); see also Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) ("Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach.") (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with

39

the force of law." Misjuns v. City of Lynchburg, 139 F.4th 378, 384 (4th Cir. 2025) (quoting

Lytle, 326 F.3d at 471)."[T]o get past the pleading stage, a complaint's description of a policy

or custom and its relationship to the underlying constitutional violation cannot be conclusory;"

it "must plausibly allege each element." Henderson v. Harris Cnty., 51 F.4th 125, 130 (5th Cir.

2022) (internal quotation marks omitted).

    Moss's complaint does not plausibly allege that any policy or custom of the BRRJA

was responsible for the constitutional deprivations of which he complains. He does not

identify any written or expressed policy that led to the alleged violations. Nor does he assert

that the BRRJA failed to train or supervise the employees named as defendants. Although he

names several administrators as defendants, he does not allege "any facts to plausibly support

that [these] defendants had final policymaking authority" on behalf of the BRRJA. Misjuns,

139 F.4th at 385; see also id. ("Caselaw is clear that '[t]he fact that a particular official—even

a policymaking official—has discretion in the exercise of particular functions does not, without

more, give rise to municipal liability based on an exercise of that discretion.'") (quoting

Pembaur v. City of Cincinnati, 475 U.S. 469, 482 (1986)); Hunter v. Town of Mocksville, 897

F.3d 538, 555 (4th Cir. 2018) ("[T]here is a marked difference between the authority to make

final policy and the authority to make final implementing decisions.") (internal quotation

marks and alterations omitted).

    The only factual allegation possibly relevant to a claim of municipal liability is Moss's

assertion that five defendants—Officers Clark, Miller, Barker, and Hamlett, and Nurse

Ayers—"participated in similar conduct described in [the] complaint against Corey Barbour."

Compl. ¶ 66. However, the complaint contains no additional information as to the alleged

"similar conduct," and this single purported example does not suffice to establish "a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle, 326 F.3d at 471. "It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." Id. (quoting Carter, 164 F.3d at 220). "Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice.'" Id. (emphasis added) (quoting Kopf v. Wing, 942 F.2d 265, 269 (4th Cir. 1991)). Moss's allegations do not suffice to establish this form of municipal liability. See Misjuns, 139 F.4th at 386 (concluding that the plaintiff failed to plead the type of "persistent and widespread practice" necessary to establish a municipal custom); Carter, 164 F.3d at 220 (concluding that the "history of isolated incidents" cited by the plaintiff did not "approach the 'widespread and permanent' practice necessary to establish municipal custom") (quoting Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995)).

For these reasons, the court concludes that the complaint fails to state a claim against the defendants in their official capacities. The defendants' collective motion to dismiss such claims will be granted.

**B.    Claims under state law**

**1.    Statutory violations**

Moss seeks relief for alleged violations of various state statutes. He references criminal statutes that make it unlawful to commit assault and battery (Virginia Code § 18.2-57), aggravated malicious wounding (Virginia Code § 18.2-51.2), and aggravated sexual battery (Virginia Code § 18.2-67.3), and he seeks to have defendants "criminal[ly] prosecut[ed]" for

41

violating those statutes. Compl. ¶ 160. He also claims that various defendants violated Virginia

Code § 19.2-83.6 by failing to intervene in the use of excessive force.

A plaintiff generally cannot pursue a civil claim based on a violation of a criminal statute

unless the statute itself creates a private right of action. See Doe v. Broderick, 225 F.3d 440,

447 (4th Cir. 2000) ("The Supreme Court historically has been loath to infer a private right of

action from a bare criminal statute.") (internal quotation marks omitted); Vansant & Gusler,

Inc. v. Washington, 245 Va. 356, 359, 429 S.E.2d 31, 33 (Va. 1993) (concluding that a plaintiff

had no private right of action for damages based on an alleged violation of a "purely . . .

criminal statute proscribing certain conduct as larceny"). None of the cited criminal statutes

"expressly provide for any private right of action imposing civil liability." Vansant, 245 Va. at

360, 429 S.E.2d at 33. Nor can a private right of action be "implied" by any of the statutory

provisions. Id. (citing School Bd. v. Giannoutsos, 238 Va. 144, 147, 380 S.E.2d 647, 649 (Va.

1989) ("[W]hen a statute creates a right and provides a remedy for the vindication of that right,

then than remedy is exclusive unless the statute says otherwise.")). Additionally, "in American

jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution

or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).

Accordingly, to the extent Moss seeks to enforce the cited criminal statutes, he fails to state a

claim upon which relief may be granted.

Virginia Code § 19.2-83.6, which Moss also cites, provides that "[a]ny law-enforcement

officer who, while in the performance of his official duties, witnesses another law-enforcement

officer engaging or attempting to engage in the use of excessive force against another person

shall intervene, when such intervention is feasible, to end the use of excessive force or

attempted use of excessive force . . . ." Va. Code Ann. § 19.2-83.6(A). The potential penalties

for a violation of § 19.2-83.6 are set forth in Virginia Code § 19.2-83.7. They include "dismissal,

demotion, suspension, or transfer of the law-enforcement officer or decertification as

provided in subsection E of § 15.2-1707." Va. Code Ann. § 19.2-83.7. Neither § 19.2-83.6 nor

§ 19.2-83.7 expressly provides for a private right of action for failure to intervene, and the

court "cannot infer a private right of action where the legislative body has declined to do so."

Loftus v. Bobzien, 848 F.3d 278, 292 (4th Cir. 2017). Thus, the court agrees with the

defendants that any state law claim under § 19.2-83.6 must be dismissed.

### 2.    Tort claims of assault and battery

To the extent Moss intended to assert common law tort claims of assault and battery,

the defendants argue that such claims are barred by the applicable statute of limitations. Under

Virginia law, "[t]he statute of limitations in Code § 8.01-243.2 applies to personal actions

relating to conditions of confinement in a state or local correctional facility," Lucas v. Woody,

287 Va. 354, 362–63, 756 S.E.2d 447, 451 (Va. 2014), including "state law assault and battery

claims," Gemaehlich v. Johnson, 599 F. App'x 473, 476 (4th Cir. 2014).[8] The statute provides

that "[s]uch action shall be brought by or on behalf of such person within one year after [his]

cause of action accrues or within six months after all administrative remedies are exhausted,

whichever occurs last." Va. Code Ann. § 8.01-243.2. A cause of action for personal injury

accrues on "the date the injury is sustained." Va. Code Ann. § 8.01-230.

---

[8] This provision only applies to claims under state law. It "does not control" Moss's federal claims under § 1983, since "the Supreme Court has unequivocally held that personal injury limitations periods apply" to such claims. Battle v. Ledford, 912 F.3d 708, 713 n.4 (4th Cir. 2018).

Here, Moss asserts claims of assault and battery based on incidents that occurred at the LADC in February 2021. He alleges that he used the grievance procedure available at the LADC to exhaust his administrative remedies and that his grievances and grievance appeals were denied in March 2021. See Compl. at 38. Moss did not file the instant action until February 2023, nearly two years later. Because it is clear from the face of the complaint that Moss's state tort claims are barred by the statute of limitations set forth in § 8.01-243.2, the defendants' motions to dismiss will be granted with respect to these claims.

## V.    Conclusion

For the reasons set forth above, the motions to dismiss filed by defendants White (ECF No. 164); Ayers (ECF No. 166); Enochs (ECF No. 168); Iovenetti (ECF No. 170); Lambert (ECF No. 172); Merrill (ECF No. 174); Roberts (ECF No. 176); Henriquez, Phillips, and Winfield (ECF No. 178); Allen, Harris, Newland, and Smith (ECF No. 181); Broggins (ECF No. 184); Fanning, Lucas, and Vosper (ECF No. 186); Bachelle and McDonald (ECF No. 188); Hodges, Jones, Mitchell, Salmon, and Trent (ECF No. 190); Clark, Miller, Hamlett, and Barker (ECF No. 193); Canzone and Mullins (ECF No. 195); Gray (ECF No. 197); Knichel and Wallace (ECF No. 198); Strader (ECF No. 200); and Tighe (ECF No. 201) are **GRANTED IN PART AND DENIED IN PART**. The motion to dismiss filed by Bonner, Draper, Millner, and Patrick (ECF No. 180) and the defendants' collective motion to dismiss the claims against them in their official capacities (ECF No. 202) are **GRANTED**. Moss's motion for sanctions (ECF No. 208) is **DENIED**.

An appropriate order will be entered.

Entered: September 4, 2025

Michael F. Urbanski
U.S. District Judge
2025.09.04 10:15:01
-04'00'

Michael F. Urbanski
Senior United States District Judge